# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| YAYA DR AMMEH | * | CIVIL ACTION NO. 06-0899 |
| Versus | * | JUDGE JAMES |
| ALBERTO GONZALES, ET AL | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241 (Doc. #1) filed by *pro se* Petitioner YaYa Drammeh ("Drammeh") on June 26, 2006. The Government has responded to Drammeh's petition (Doc. #8) and an evidentiary hearing was held on September 28, 2006, with post-hearing briefs filed thereafter. For reasons stated below, it is recommended that Drammeh's petition be **DISMISSED without prejudice**.

## BACKGROUND

Drammeh, a native and citizen of Gambia, first entered the United States as a non-immigrant visitor on October 29, 1988. Although not an American citizen himself, Drammeh's wife and three children are American citizens. After failing to appear for a hearing before an immigration judge, Drammeh was ordered removed *in absentia* on May 11, 2005, pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").[1] 28 U.S.C. § 1182 (a)(6)(A)(i). On November 7, 2005, Drammeh was transferred into the custody of the United States Bureau of Immigration and Customs Enforcement ("ICE") from the Fulton County Jail in Georgia where, apparently, he had been imprisoned in connection with his arrest on May 31, 2005, for alleged trafficking in cocaine and other illegal drugs. Removal proceedings had begun

---

[1] Despite receiving a Notice to Appear, Drammeh failed to appear at the removal hearing. The removal order states that Drammeh admitted the factual allegations in the Notice to Appear and conceded removability. Gov. Ex. 1. Drammeh denies any such admission.

shortly thereafter.

Drammeh's detention pending his removal has not been harmonious. On November 22, 2005, Drammeh was served with a Form I-229(a) Warning for Failure to Depart, which notifies a detainee in detail of his statutory obligation to assist ICE in facilitating his removal. The document contains a notation indicating that Drammeh was uncooperative and expressed his desire not to return to Gambia. Gov. Ex. 4. Drammeh admits that he refused to provide his signature and fingerprint on the document.[2] On December 28, 2005, Drammeh was served with a letter from the USICE stating that the Gambian Embassy had requested a telephonic interview with him in order to facilitate the issuance of a travel document. *See* Gov. Ex. 5. The Government contends that Drammeh again refused to sign and provide his fingerprint. Although the record of service accompanying the letter exhibits no fingerprint or signature and contains a notation indicating Drammeh's refusal, *see* Gov. Ex. 5, Drammeh testified that he did in fact provide his signature and fingerprint[3] and that, on the same day, the deportation officer attempted to call the Gambian Embassy, but was unable to reach the ambassador. According to Drammeh, the deportation officer told him at that time that he would set another appointment.

On January 27, 2005, Drammeh received another letter from USICE stating that he had failed to comply with the Gambian Embassy's first request for a telephonic interview and that the Embassy had requested another interview. The Government contends that Drammeh again

---

[2]*See* Gov. Ex. 4. Drammeh testified that he refused to sign because his wife told him that she was going to hire him a lawyer so that he might attempt to obtain legal status because he is married to an American citizen. However, he has since abandoned any efforts to obtain legal status and is ready to return to Gambia.

[3]Later in the hearing, while being questioned by the Government, Drammeh testified that he never received the December 28, 2006 letter.

2

refused to sign[4]; however, Drammeh's signature and fingerprint appear on the record of service accompanying the letter. *See* Gov. Ex. 6. Drammeh testified that the deportation officer again called the Gambian Embassy, but was unable to reach anyone, and that the officer told Drammeh to attempt to contact the Embassy on his own.[5] On February 6, 2006, ICE conducted a post-order custody review of Drammeh's file. The reviewing officer noted Drammeh's prior arrest for drugs and his refusal to sign documents related to ICE's efforts to obtain the necessary travel documents. However, the officer erroneously noted that Drammeh had refused to sign ICE's January 27, 2006, request for his participation in a telephone interview with the Gambian Embassy. Relying primarily on Drammeh's failure to cooperate in effectuating his removal, the reviewing officer recommended that Drammeh's detention continue. On February 28, 2006, ICE informed Drammeh of the review of his file and endorsed the reviewing officer's recommendation, citing Drammeh's failure to provide any documents of identity and/or nationality and failure to comply with the telephonic interviews with the Gambian Embassy. Gov. Ex. 7. The record of service indicates that Drammeh received this letter on March 1, 2006, and that he provided his signature and fingerprint. According to Drammeh, there was no attempt to contact the Embassy during this visit. However, Drammeh testified that he later contacted the Embassy himself and was told that nothing could be done without USICE's involvement.

Although the documentation provided by the Government indicates that Drammeh continued to refuse to cooperate with the consulate in obtaining travel documents by refusing to participate in a telephone interview as late as February 28, 2006, Drammeh testified that the only time that he refused to cooperate was in November of 2005. He further testified that, during the

---

[4]The Post Order Custody Review Worksheet submitted by the Government also indicates that Drammeh refused to sign. *See* Gov. Ex. 3.

[5]However, the post custody review worksheet provided by the Government states that Drammeh refused to contact the Embassy on January 27, 2006.

3

time that he was at the Tensas Correctional Facility in Waterproof, Louisiana, his deportation officer told him that he was trying to get in touch with the Gambian Embassy but that, from March 2006 to August 2006, no one asked him to try to call the Gambian Embassy. He further testified that he attempted to call the embassy on his own, although it is not clear how many times this occurred, but that his efforts were futile because the Embassy needed to talk to an immigration officer.[6] In August of 2006, an immigration officer contacted the Gambian Embassy by telephone. Drammeh testified that he participated in this call and talked to the Embassy.

Drammeh's post custody review worksheet indicates that a travel document request was made on December 20, 2005. According to Theresa Bucholz, a deportation with the Department of Homeland Security, ICE also attempted to obtain a travel document for Drammeh in March and June of 2006, and that the last attempt was on August 22, 2006.[7] Regarding the progress being made in response to these requests, Bucholz stated that Officer Jairam, who spoke with the Embassy approximately one week prior to the day of the hearing, informed her that the Embassy is trying to establish the identity and citizenship of Drammeh. As for when a travel document might be issued, Bucholz stated that she had no reason to believe that the Gambian Embassy will not issue a travel document if Drammeh fully cooperates. However, she could provide no time frame for when this might occur. She further testified that a phone call was made to the Gambian Embassy on the day of the hearing, September 28, 2006, but no one answered, and that ICE officials/deportation officers have attempted on three occasions to have Drammeh participate in a telephone interview with the consulate. Bucholz testified that Drammeh's file indicated that he did participate in a telephone interview with the Embassy in August of 2006, but there is no

---

[6]Drammeh testified that he told the Embassy he was ready to return to Gambia.

[7]Documentation provided by the Government shows that travel document requests were made on June 22, 2006 and August 22, 2006.

indication of whether the interview was successful and that it appears that the Embassy was unable, as of September 2006, to confirm the identity or citizenship of Drammeh.

Bucholz testified that a detainee's refusal to sign and provide his fingerprint indicates non-compliance and an unwillingness to be removed from the United States and that, judging from a review of the file, Drammeh remains in custody due to his failure to cooperate with deportation officers to effect his removal. She stated that this lack of cooperation is exhibited by Drammeh's refusal to participate in a telephone interview with the Gambian Embassy and that the file indicated no efforts by Drammeh to schedule a telephone interview with the Embassy from March until August. However, Bucholz also testified that there is no indication that Drammeh ever refused to provide his name, date of birth, or the name of his parents or that he ever submitted false information in this regard. When asked about the notation on Drammeh's post custody review sheet indicating that a travel document request was sent to the Gambian Embassy on January 22, 2005, Bucholz testified that there is nothing in Drammeh's file indicating what came of the request. According to Bucholz, there are at least two, if not three, letters indicating that a deportation officer set up a telephonic interview with Drammeh and the Gambian Embassy which never took place; however, the Government has not provided the letters. With regard to why the Gambian Embassy remains unable to confirm Drammeh's identity, Bucholz would only guess that this could be because the information Drammeh provided to the Embassy did not conclusively confirm his identity.

In his petition, Drammeh challenges his post-removal detention under the framework the United States Supreme Court established in *Zadvydas v. Davis*, 533 U.S. 678 (2001). According to Drammeh, the presumptively reasonable six-month detention period has expired and there is no significant likelihood of his removal in the reasonably foreseeable future. The Government claims that Drammeh has failed to demonstrate that his removal is not likely in the reasonably

5

foreseeable future in light of the fact that his removal period was tolled according to INA § 241(a)(1)(C) due to his own conduct delaying removal, namely his failure to provide his fingerprints for several months following his receipt into ICE custody and his refusal to participate in a telephone interview until August 2006.

## LAW AND ANALYSIS

Post-removal-order detention is governed by 8 U.S.C. § 1231(a), which requires the Attorney General to attempt to effectuate removal within a 90-day removal period. The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6), the post-removal-order detention statute, implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal. *Id*. at 688-98. The Court noted that the statute does not permit indefinite detention; furthermore, the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id*. at 697-702. After that six month period expires, and the immigrant demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the government must furnish sufficient rebuttal evidence. *Id*. However, the lapse of the presumptive detention period, by itself, does not mandate release, and the petitioner must still provide good reason to believe that his removal is unlikely in the foreseeable future. *See* 533 U.S. at 701. "Once the alien provides good reason to believe that there is no significant likelihood of removal in the

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. Section 1231 also provides that if an alien acts to frustrate the government's ability to remove him, the removal period is tolled during the period of the alien's actions. 8 U.S.C. § 1231(a)(1)(C).

Although Drammeh was ordered removed on May 11, 2005, Drammeh's removal period commenced on November 7, 2005, when he was released from criminal custody into ICE custody. 8 U.S.C. § 1231(a)(1)(B). While the presumptively reasonable six-month detention period has expired, the lapse of the presumptive detention period, by itself, does not mandate release, *see Zadvydas*, 533 U.S. at 701. Although Drammeh denies as much, the Government has produced documentation indicating Drammeh's refusal to cooperate with the ICE in effecting his removal through February 28, 2006.[8] *See* Gov. Exhibits. 2-7. Therefore, in accordance with 8 U.S.C. § 1231(a)(1)(C), Drammeh's removal period was tolled during this time due to his efforts to frustrate his removal. The Government contends that Drammeh's refusal to cooperate extended to August 2006 because it was not until this time that he agreed to participate in the requested telephone interview with the Gambian Embassy. Drammeh denies this allegation, and the Government has produced no documentary evidence supporting its argument that the reason the telephone interview did not take place until August 2006 was Drammeh's refusal to participate. The documents submitted by the Government evidence Drammeh's refusal to participate in the telephone interview as of February 28, 2006, at the latest. However, the Government's sole witness, Theresa Bucholz, did testify that it appeared from Drammeh's file

---

[8]This non-cooperation comes in the form of Drammeh's refusal to participate in a telephone interview necessary to the Gambian Embassy's issuance of a travel document for him.

7

that his deportation officers have attempted on three occasions to have Drammeh participate in a telephone interview and that the reason for the delay in his removal is his refusal to participate in a telephone interview.

It is not necessary for this Court to decide if Drammeh's efforts to frustrate his removal ended in February or August for, even assuming Drammeh was fully cooperative as of the end of February, he has failed to show that there is no significant likelihood of his removal in the reasonably foreseeable future. Drammeh participated in a telephone interview with the Gambian Embassy in August 2006, and ICE has been actively attempting to obtain a travel document for Drammeh, with the last request coming on August 22, 2006.[9] Although no travel document has been issued as of yet, it appears that the Gambian Embassy is attempting to verify the identity and citizenship of Drammeh. The Embassy has given no indication that it will not issue a travel document, and Bucholz testified that, given the fact that Drammeh has participated in the telephone interview requested by the Embassy, there is no reason to believe at this time that a travel document will not be issued in the reasonably foreseeable future, assuming Drammeh fully cooperates.

Accordingly, in light of the Government's continued efforts to obtain a travel document for Drammeh and the fact that the Gambian Embassy is in the process of verifying Drammeh's identity and citizenship, it appears that there is a significant likelihood of Drammeh's removal in the foreseeable future. Thus, it is recommended that Drammeh's petition be **DISMISSED WITHOUT PREJUDICE.** However, given that Drammeh has been in ICE custody for over a year, albeit it has only been since February at the earliest that his detention has counted toward the six month reasonable period, it is also recommended that he be notified of his right to file a new habeas petition should the delays in his removal continue for a prolonged period following

---

[9]Previous attempts were made in December 2005 and in March and June of 2006.

dismissal of this action.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of November, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE